**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN CUMMINGS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| WALTER INVESTMENT MANAGEMENT, CORP., MARK J. O'BRIEN, DENMAR DIXON, BOB YEARY, MARC HELM, and CHARLES E. CAUTHEN, | ) ) ) ) ) |
| Defendants, | ) |

Civil Action No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff John Cummings ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Walter Investment Management, Corp. ("Walter Investment" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Walter Investment securities between May 9, 2012 and June 6, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.      Walter Investment is a loan servicer and business solutions provider focused on generating recurring, fee-based revenues from an "asset-light" platform. The Company specializes in offering creative, structured solutions to owners of less-than-prime, non-conforming and other credit-challenged mortgage assets.

3.      Throughout the Class Period, the Company misled investors regarding the integrity of its financial reporting, including the reporting of expenses associated with certain financing transactions, and the liabilities of its recent acquisition of Reverse Mortgage Solutions, Inc. ("RMS"), a mortgage company with a similar business model to Walter Investment.

4.      On October 25, 2012, the Company disclosed that it had engaged Credit Suisse Securities LLC and Morgan Stanley Senior Funding, Inc. to assist in the arrangement of a senior secured first lien term loan facility in the aggregate principal amount of up to $600 million and a senior secured revolving credit facility in the aggregate principal amount of up to $100 million. The Company stated that it intended to use the proceeds of the senior secured first lien term loan facility to (1) repay all indebtedness outstanding under its existing first lien term loan (approximately $444 million at June 30, 2012), (2) pay related transaction costs and expenses,

and (3) pursue growth opportunities, including acquisitions, and for working capital and general corporate purposes.

5.     Shortly thereafter, on November 7, 2012, the Company announced that it had completed its acquisition of Reverse Mortgage Solutions, Inc. ("RMS") for consideration of approximately $120 million, $95 million of which was cash consideration and the remainder with 891,265 of the Company's shares.

6.     On March 18, 2013, the Company shocked investors by disclosing that, based on an evaluation by the Company's Board of Directors and management, "our management, including our Chief Executive Officer and our Chief Financial Officer, has identified a material weakness in our internal control over financial reporting. As a result of this material weakness, management has concluded that, as of the end of the period covered by this Annual Report on Form 10-K, our internal control over financial reporting was not effective."

7.     On this news the Company's shares fell $8.61 per share to close on March 19, 2013 at $32.98 per share, a drop of over 20% that wiped out over $306 million in shareholder value.

8.     The Company finally addressed the totality of the weaknesses in its financial reporting practices, on June 6, 2013, when the Company reported that:

> Subsequent to the completion of the RMS Acquisition, the Company discovered a failure to record certain estimated liabilities to investors relating to servicing errors by RMS. . . Although the Company has not determined the full effect of these matters and is completing its review thereof, on May 31, 2013, based on preliminary conclusions after discussions with RMS' historical independent registered public accounting firm, management of the Company concluded that the RMS Historical Financial Statements, and the related report of RMS' historical independent registered public accounting firm, should no longer be relied upon, and should be restated to reflect the error described above. The Company has determined that the error is material to the balance sheets and income statements included in the RMS Historical Financial Statements, but has

no material effect on the statements of cash flows. In addition, management has concluded that the combined pro forma financial information previously filed with the Affected 8-Ks should no longer be relied upon.

9.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's lacked adequate internal controls over financial accounting; (2)  the Company's internal controls were not effective; (3)  the Company's financial statements contained false and misleading statements; (4) the Company had failed to disclose material weaknesses in the internal controls of RMS; (5) the Company had overstated the value of its recent acquisition, RMS; and (6) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

10.      During the Class Period, Company insiders sold over $6.9 million of their Walter Investment shares, immediately prior to the collapse of the Company's share price.

11.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's Securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

13.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

14.    Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Walter Investments' corporate headquarters are located in this District.

15.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.    Plaintiff, as set forth in the attached Certification, purchased Walter Investment Securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the corrective disclosures.

17.    Defendant Walter Investment is a Maryland corporation with its headquarters located at 3000 Bayport Drive, Suite 1100, Tampa, FL.

18.    Defendant Mark J. O'Brien ("O'Brien") was at all relevant times the Company's Chairman of the Board of Directors and Chief Executive Officer. During the Class Period, Defendant O'Brien dumped approximately 74,778 Company shares on an unsuspecting market.

19.    Defendant Denmar J. Dixon ("Dixon") was at all relevant times the Company's Vice Chairman and Executive Vice President.  Defendant Dixon had also served on the Company's Audit Committee, Nominating and Corporate Governance Committee, and as Chairman of the Compensation and Human Resources Committee. During the Class Period, Defendant Dixon dumped approximately 51,120 Company shares on an unsuspecting market.

20.    Defendant Bob Yeary ("Yeary") was at all relevant times the Chairman of Reverse Mortgage Solutions, Inc.

21.     Defendant Marc Helm ("Helm") was at all relevant times the President and CEO of Reverse Mortgage Solutions, Inc.

22.     Defendant Charles E. Cauthen ("Cauthen") was at all relevant times the Company's Chief Operating Officer and Chief Financial Officer. During the Class Period, Defendant Cauthen dumped approximately 24,131 Company shares on an unsuspecting market.

23.     The defendants referenced above in ¶¶ 18 through 23 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Walter Investment is a loan servicer and business solutions provider focused on generating recurring, fee-based revenues from an "asset-light" platform. The Company specializes in offering creative, structured solutions to owners of less-than-prime, non-conforming and other credit-challenged mortgage assets.

### Materially False and Misleading
### Statements Issued During the Class Period

25.     On May 9, 2012, the Company filed with the SEC on Form 10-Q, signed by Defendants O'Brien and Cauthen, its quarterly report for the period ending March 31, 2012.  The Company reported $57.1 million in cash and cash equivalents, $2.27 billion in residential loan assets, and loan receivables of $228.59 million net. The Company also reported total revenues of $165.7 million, total expenses of $162.2 million and net income of $5.1 million, or $0.17 diluted earnings per share. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants O'Brien and Cauthen stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

26.     On August 9, 2012, the Company filed with the SEC on Form 10-Q, signed by Defendants O'Brien and Cauthen, its quarterly report for the period ending June 30, 2012.  The Company reported $38.3 million in cash and cash equivalents, $2.24 billion in residential loan assets, and net loan receivables of $225.7 million. The Company also reported total revenues of $164.1 million, total expenses of $164.1 million and net income of $428,000 or $0.01 diluted earnings per share. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants O'Brien and Cauthen stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

27.     On October 25, 2012, the Company disclosed in a press release, and in a Form 8-K filed with the SEC, that it had engaged Credit Suisse Securities LLC and Morgan Stanley Senior Funding, Inc. to assist in the arrangement of a senior secured first lien term loan facility in the aggregate principal amount of up to $600 million and a senior secured revolving credit facility in the aggregate principal amount of up to $100 million. The Company stated that intended to use the proceeds of borrowings under the senior secured first lien term loan facility to (1) repay all indebtedness outstanding under its existing first lien term loan (approximately $444 million at June 30, 2012), (2) pay related transaction costs and expenses, and (3) pursue potential growth opportunities, including acquisitions, and for working capital and general corporate purposes.

28.     Shortly thereafter on, November 7, 2012, the Company announced in a press release, and in a Form 8-K filed with the SEC, that it had completed its acquisition of Reverse Mortgage Solutions, Inc. ("RMS") for consideration of approximately $120 million, $95 million

of which was cash consideration, and the remainder of which was paid for with o891,265 of the Company's shares.

29.    On November 8, 2013, the Company filed with the SEC on Form 10-Q, signed by Defendants O'Brien and Cauthen, its quarterly report for the period ending September 30, 2012. The Company reported $38.5 million in cash and cash equivalents, $2.20 billion in residential loan assets, and net loan receivables of $208.2 million. The Company also reported total revenues of $160.7 million, total expenses of $153.3 million and net income of $6.45 million or $0.21 diluted earnings per share. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants O'Brien and Cauthen stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

30.    On January 17, 2013, the Company filed an amended 8-K, in order to report pro-forma financial information relating to the RMS acquisition previously disclosed by the Company on November 7, 2012. The Company stated the following:

> The improvement of the Company's results in the fourth quarter of 2012 was On September 6, 2012, Walter Investment Management Corp. (the " Company ") filed a Current Report on Form 8-K, reporting, among other things, that pursuant to the terms of a Stock Purchase Agreement, dated as of August 31, 2012 (as amended), by and among the Company, Reverse Mortgage Solutions, Inc. (" RMS "), JAM Special Opportunities Fund, L.P., as a stockholder seller and as the sellers' representative, and the other stockholder sellers listed on the signature pages thereto, the Company would acquire all of the outstanding stock of RMS (the " Acquisition "). On November 7, 2012, the Company filed a Current Report on Form 8-K (the " Original Form 8-K "), reporting that the Acquisition had closed on November 1, 2012 and, incorporating by reference from the Company's Current Report on Form 8-K filed on October 15, 2012, the audited consolidated balance sheets of RMS as of December 31, 2011 and 2010, and the related consolidated statements of operations, changes in stockholders' equity and cash flows for the years ended December 31, 2011 and 2010 and the unaudited consolidated balance sheets of RMS as of June 30, 2012 and December 31, 2011, and the related consolidated statements of operations and cash flows for the six

months ended June 30, 2012 and 2011 and the consolidated statement of changes in stockholders' equity for the six months ended June 30, 2012.

As permitted under Item 9.01 of Form 8-K, the Company indicated in the Original Form 8-K that it would file the financial statements and pro forma financial information required under Item 9.01 of Form 8-K within 71 calendar days after the date on which the Original Form 8-K was required to be filed. This Amendment No. 1 on Form 8-K/A amends the Original Form 8-K to include the required financial statements and pro forma financial information.

31.     On May 10, 2013, the Company filed with the SEC on Form 10-Q, signed by Defendants O'Brien and Cauthen, its quarterly report for the period ending March 31, 2012.  The Company reported $624.7 million in cash and cash equivalents, $9.5 billion in residential loan assets, and net loan receivables of $260.4 million. In addition the Company included two new line items in its consolidated balance sheet, servicer and protective advances of $364.1 million, and servicing rights and related intangible assets of $964.7 million. The Company also reported total revenues of $291.8 million, total expenses of $280.8 million and net income of $27.7 million or $0.74 diluted earnings per share. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants O'Brien and Cauthen stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

32.     The statements referenced in ¶¶ 23 through 29 above, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company's lacked adequate internal controls over financial accounting; (2)  the Company's internal controls were not effective; (3)  the Company's financial statements contained false and misleading statements; (4) the Company had failed to disclose material weaknesses in the internal controls of RMS; (5) the Company had overstated the value of its recent acquisitions, including the value of RMS; and

(6) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

33.     On March 18, 2013 the Company shocked investors by disclosing that, based on an evaluation by the Company's Board of Directors and management, "our management, including our Chief Executive Officer and our Chief Financial Officer, has identified a material weakness in our internal control over financial reporting. As a result of this material weakness, management has concluded that, as of the end of the period covered by this Annual Report on Form 10-K, our internal control over financial reporting was not effective."

34.     On this news, the Company's shares fell $8.61 per share to close on March 19, 2013 at $32.98 per share, a drop of over 20% that wiped out over $306 million in shareholder value.

35.     The Company finally addressed the totality of the weaknesses in its financial reporting practices, when on June 6, 2013, the Company reported that:

> Subsequent to the completion of the RMS Acquisition, the Company discovered a failure to record certain estimated liabilities to investors relating to servicing errors by RMS. . .Although the Company has not determined the full effect of these matters and is completing its review thereof, on May 31, 2013, based on preliminary conclusions after discussions with RMS' historical independent registered public accounting firm, management of the Company concluded that the RMS Historical Financial Statements, and the related report of RMS' historical independent registered public accounting firm, should no longer be relied upon, and should be restated to reflect the error described above. The Company has determined that the error is material to the balance sheets and income statements included in the RMS Historical Financial Statements, but has no material effect on the statements of cash flows. In addition, management has concluded that the combined pro forma financial information previously filed with the Affected 8-Ks should no longer be relied upon.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Walter Investment Securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Walter Investment Securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Walter Investment or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that custom-arily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Walter Investment;

- whether the Individual Defendants caused Walter Investment to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Walter Investment Securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Walter Investment Securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's Securities; and

- Plaintiff and members of the Class purchased and/or sold Walter Investment Securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## NO SAFE HARBOR

44. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Walter Investment who knew that those statements were false when made.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of Securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Walter Investment Securities; and (iii) cause Plaintiff and other members of the Class to purchase Walter Investment Securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

14

influence the market for Walter Investment Securities.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Walter Investment's finances and business prospects.

49.     By virtue of their positions at Walter Investment, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.   Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.   In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.   As the senior managers and/or directors of Walter Investment, the Individual Defendants had knowledge of the details of Walter Investment's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Walter Investment.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Walter Investment's businesses, operations, future financial condition and future prospects.   As a

result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Walter Investment Securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Walter Investment's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Walter Investment Securities at artificially inflated prices and relied upon the price of the Securities, the integrity of the market for the Securities and/or upon statements disseminated by defendants, and were damaged thereby.

52.     During the Class Period, Walter Investment Securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Walter Investment Securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Walter Investment securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Walter Investment Securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's Securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of Walter Investment and or/RMS, and conducted and participated, directly and indirectly, in the conduct of Walter Investment's or RMS' business affairs.  Because of their senior positions, they knew the adverse non-public information about Walter Investment's misstatement of income and expenses and false financial statements.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Walter Investment's and/or RMS' financial condition and results of operations, and to correct promptly any public statements issued by Walter Investment which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Walter Investment disseminated in the marketplace during the Class Period concerning Walter Investment's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Walter Investment to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Walter Investments and/or RMS within the meaning of Section 20(a) of

the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Walter Investment securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of Walter Investment and/or RMS.  By reason of their senior management positions and/or being directors of Walter Investment and/or RMS, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Walter Investment to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Walter Investment and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Walter Investment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  July 23, 2013

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**

*/s/* Jayne A. Goldstein
Jayne A. Goldstein
Florida Bar Number: 144088
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
954-315-3454 tel
954-315-3455 fax

**POMERANTZ   GROSSMAN   HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**POMERANTZ   GROSSMAN   HUFFORD
DAHLSTROM & GROSS LLP**
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

***Attorneys for Plaintiff***